UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA MCNEAL, on behalf of herself and
all others similarly situated,

    Plaintiff,

v.

COMENITY BANK,

    Defendant.
_____/

CASE NO.:

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

1. Plaintiff, Angela McNeal, individually and on behalf of all others similarly situated, asserts Comenity Bank ("Comenity") "robocalled" her in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA") and Invasion of Privacy ("IOP").

2. Comenity has a corporate policy of repeatedly contacting family and friends of debtors to leave supposedly "urgent messages" for the alleged debtor, using this as a tool to humiliate and embarrass alleged debtors as well as to intentionally cause aggravation and annoyance to their relatives and friends.

3. Harassment of family members and friends is not a novel form of debt collection abuse by any means. Indeed, Comenity is notable for having established an entire department set up to "skip trace" or otherwise track down family members and friends of alleged debtors, just so it can illegally roboblast abusive and deceptive calls to them.

4. As is further explained below, Comenity's illegal tactics are another reason why robocalls continue to be the #1 complaint in America.

# INTRODUCTION

5. In 1991, Congress enacted the TCPA because of the abuses of automatic telephone dialers.

6. Senator Hollings, the TCPA's sponsor, described these calls as "**the scourge of modern civilization**" 137 Cong. Rec. 30, 821 (1991).

7. Today, this scourge has become even worse than anyone ever imagined in 1991.

8. In May of 2019, Americans were bombarded with a shocking 5.2 *billion* robocalls —an increase by an incredible 370% just since December 2015.[1]

9. Recently, the 4th Circuit in *Krakauer v. Dish L.L.C.,* No. 18-1518, 2019 WL 2292196 (4th Cir. May 30, 2019) rendered a compelling and thoughtful opinion which illustrates in no uncertain terms why these TCPA case can and should be handled on a class wide basis, holding:

> Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition. In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications. (p. 18)
>
> The TCPA was enacted to solve a problem. Simply put, people felt almost helpless in the face of repeated and unwanted telemarketing calls. S. Rep. No. 102-178, at 1-2 (1991). Congress responded with an Act that featured a combination of public and private enforcement, allowing suits both to enjoin intrusive practices and deter future violations through money damages. The features of the private right of action in § 227(c)(5), whether statutory damages or strict liability, evince an intent by Congress to allow consumers to bring their claims at modest personal expense. These same features

---

[1] YouMail Robocall Index, available at http://RobocallIndex.com/

> also make TCPA claims amenable to class action resolution. Dish's arguments, if accepted, would contort a simple and administrable statute into one that is both burdensome and toothless. It would be dispiriting beyond belief if courts defeated Congress' obvious attempt to vindicate the public interest with interpretations that ignored the purpose, text, and structure of this Act at the behest of those whose abusive practices the legislative branch had meant to curb. (p. 33)
>
> This will not happen. Class adjudication is complicated, and getting it right requires a careful parsing of the claims and the evidence from the start. It also requires striking a balance between efficient administration and fairness to all those affected, whether they be the class members, the defendants, or absent parties who are nonetheless bound by the judgment. The proceedings below reflected just the measured and thorough approach that we might hope for in such demanding situations. (*Id*.)

10. "[T]he legislative intent behind the TCPA supports the view that class action is the superior method of litigation. '[I]f the goal is to **remove the scourge**' from our society, it is unlikely that individual suits would deter large entities as effectively as aggregated class actions and that individuals would be motivated … to sue in the absence of the class action vehicle." [emphasis added] *Krakauer v. Dish Network L.L.C.,* 311 F.D.R. 384, 400 (M.D.N.C. May 22, 2017).

11. Comenity is not the only one of these "large entities" that clearly needs to be stopped, but also bears the dubious distinction of perhaps being the most abusive robocalling debt collector in the country.

12. Comenity recently settled the TCPA class action, *Carrie Couser v. Comenity Bank, et al,* 3:12-cv-02484-MMA-BGS, for $8,475,000 settlement, and in doing so, specifically carved out what it referred to as "wrong numbers". These "wrong numbers" are at issue on this case. However, these are not really "wrong" numbers, they are in fact the exact right number Comenity

intended to call. They would be more accurately labeled "illegal numbers" robocalled without express consent.

13. The *Couser* class action has not stopped Comenity from breaking the law; indeed, it appears to have emboldened it into assuming it can continue to break the law and get away with it.

14. As suggested in the *Krakauer* case, individual suits have provided no deterrence whatsoever against serial TCPA violators like Comenity, as evidenced by the over 100 individual lawsuits against Comenity in the last few years.

15. Comenity, as a serial violator of the TCPA, and has settled hundreds of TCPA lawsuits, including those in arbitration and handled pre-suit. Comenity pays "hush-money" to their individual victims of robo-harassment that are aware enough of their rights to sue it, and then forces these persons to sign confidentiality agreements. Comenity in essence uses this as a way to continue to break the law and get away with it.[2]

16. Comenity's business model in making these types of calls puts profits over people. This form of abuse is so lucrative that individual settlements can be made without making a significant dent in the profits inherent to the abuse.

17. Comenity Bank is one of the top five companies with the most debt collection complaints in 2017 according to an analysis completed by the National Consumer Law Center ("NCLC") using data from the Federal Trade Commission ("FTC"). Please see Exhibit A attached hereto this Complaint.

---

[2] This information will be obtained through discovery and will assist this Court in determining the willful and knowing violation of the TCPA.

18. Comenity has been ordered to turn over the prior complaints made by their own customers as discovery in another lawsuit. See *Ehrlich v. Comenity Capital Bank, a subsidiary of Comenity LLC*, (S.D. Fla. August 07, 2017) attached as Exhibit B.

19. The TCPA was enacted to prevent companies like Comenity from invading American citizens' privacy and making illegal robocalls.

20. Congress enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

21. According to findings by the Federal Communication Commission ("FCC")—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. These types of damages are the same shared by the Plaintiff and the class members.

## JURISDICTION AND VENUE

22. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

23. The alleged violations described in this complaint took place in Tampa, Florida, which is within the territorial jurisdiction of the Middle District of Florida.

## **FACTUAL ALLEGATIONS**

24. Plaintiff is a natural person, and citizen of the State of Florida, residing in Tampa, Florida.

25. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); Osorio v. State Farm Bank, F.S.B., 746 F. 3d 1242 (11th Cir. 2014).

26. Comenity is a corporation with its principal place of business in Columbus, Ohio, and conducts business in the State of Florida and across the United States.

27. Comenity has a despicable policy of calling family members and friends of the alleged debtor. Comenity then has their collectors read from a script that has no other purpose than to terrorize the alleged debtor through harassment of their friends and relatives.

28. Despite Comenity's statements regarding urgency, there is absolutely nothing "urgent" about Comenity's communications. Rather, these are garden-variety debt collection calls.

29. Comenity creates this false sense of "urgency" as a way to panic family members and friends with the hopes that they will call the alleged debtor and further instill panic in them, as well as to force the debtor to experience extreme embarrassment by forcing them to explain the debt-collection purpose behind the call to the friend or relative. Ultimately, another purpose of this tactic is to make it so that family and friends feel harassed and demand that the alleged debtor resolve the debt to end the harassment.

30. Comenity obviously never had "express consent" to call Plaintiff's cellular telephone number or other similarly situated family and friends, as they had no relationship with Comenity.

31. Comenity placed several calls to Plaintiff's cellular telephone using an ATDS without the express prior consent to do so, and with the knowledge that they were calling the wrong number.

32. Comenity is believed to have used an "off the shelf predictive dialer" which qualifies as an ATDS to make the calls referenced in this complaint. Plaintiff's counsel has represented numerous debt collection clients in actions against Comenity who have described indicia of autodialer use by Comenity, such as the existence of a distinctive pause before Comenity's representative came onto the line.

33. Comenity has called numerous other individuals, including class members, without their express consent using this exact same predictive dialer.

34. Each call Comenity made to the Plaintiff's aforementioned cellular telephone number was done so without the "express permission" of the Plaintiff.

35. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (813) 325-3537.

36. Comenity made at least one call to (813) 325-3537 using an "automatic telephone dialing system" (ATDS).

37. Comenity made numerous calls to (813) 325-3537 using an ATDS.

38. Each call Comenity made to (813) 325-3537 in the last four years was made using an ATDS.

39. Each call Comenity made to the Plaintiff's cell phone was done so knowing there was no "express consent" of the Plaintiff.

40. Each call Comenity made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a

random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

41. By effectuating these unlawful phone calls, Comenity has caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

42. Comenity's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

43. Comenity's phone calls harmed Plaintiff by wasting her time, trespassed on her phone, invaded her privacy as well as caused aggravation and inconvenience.

44. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: Rules Implementing the TCPA of 1991, 23 FCC Rcd 559, 562 (2007). Comenity's phone calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

45. Despite actual knowledge of its wrongdoing, Comenity continued the campaign of illegal robocalls.

46. Comenity willfully or knowingly violated the TCPA with respect to the Plaintiff and the members of the class.

## COUNT I

### (Violation of the TCPA)

47. Plaintiff incorporates Paragraphs one (1) through forty- six (46) above.

48. Comenity violated the TCPA with respect to the Plaintiff and members of the class each time it called the Plaintiff or those class members that were similarly situated without having express consent to place such calls using an ATDS.

49. Comenity knowingly or willfully violated the TCPA with respect to the Plaintiff and the class.

50. Comenity's repeated placement of unconsented-to, non-emergency telephone calls using an automatic telephone dialing system to the wireless telephone number of the Plaintiff and class members was a violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

51. As a result of Comenity's illegal conduct, Plaintiff and the members of the class suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

52. The Plaintiff is also entitled to statutory treble damages for Comenity's willful or knowing violations of the TCPA.

53. Plaintiff and class members are also entitled to, and do seek, injunctive relief prohibiting Comenity from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Comenity for statutory damages, treble damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II

**(Invasion of Privacy – Intrusion Upon Seclusion)**

54. Plaintiff incorporates Paragraphs one (1) through forty- six (46) as if fully restated herein.

55. Defendant's policy of calling relatives and friends has repeatedly and intentionally invaded Plaintiff's privacy through Defendant's collection conduct.

56. All of the calls made to Plaintiff's cell phone by Defendant and its agents using an automatic telephone dialing system were made in violation of the TCPA and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

57. Defendant's persistent calls to her cellular telephone eliminated Plaintiff's right to be left alone. Defendant continues this practice with no regard to an alleged debtor's individualized situation and relationship with family members and friends.

58. Defendant's collection calls purposely made to the friend or family of an alleged debtor disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during her work, and continually frustrated and annoyed Plaintiff.

59. Plaintiff has no escape to the incessant calls as Plaintiff is not who Defendant is even looking for. By continuing this campaign of calls, Defendant has intentionally made Plaintiff responsible in relaying communications that invade and disrupts Plaintiff during her everyday life.

60. These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with her cellular phone.

61. By calling her cellular phone with the intentions of harassment as described herein, under the false guise of finding another person, Plaintiff had no escape from these collection calls either in her home or when she left the home.

62. By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

63. Defendant's harassing collection conduct and tactic of repeatedly auto dialing Plaintiff to her cellular willfully knowing that Plaintiff is not the alleged debtor is highly offensive to a reasonable person.

64. Defendant intentionally intruded upon Plaintiff's solitude and seclusion.

65. As a result of Defendant's action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## CLASS ACTION ALLEGATIONS

66. Plaintiff restates each of the allegations in all other paragraphs as if fully stated herein. Plaintiff, individually and on behalf of all others similarly situated, brings the above claims on behalf of a Class.

67. In this case, Plaintiff seeks to certify the class, subject to amendment, as follows:

    The Comenity TCPA Class consists of:

    (1) All persons in the United States (2) to whose cellular telephone number (3) Comenity placed a non-emergency telephone call relating to a debt (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the filing of this complaint and (6) where Comenity did not have express consent to call said cellular telephone number.

68. Plaintiff represents and is a member of the Class. Excluded from the Class are Comenity and any entities in which Comenity has a controlling interest, Comenity's agents and employees, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

69. Plaintiff is presently unaware of the exact number of members in the Class, but based upon the size and scope of Comenity's business, including the fact that Comenity Bank has

been sued hundreds of times for violating the TCPA, Plaintiff reasonably believes that the class members number at a minimum is in the thousands.

70. Plaintiff and all members of the Class have been harmed by Comenity's actions.

71. This Class Action Complaint seeks money damages and injunctive relief.

72. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim.

73. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits. The class can be easily identified through records maintained by Comenity.

74. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. Those common questions of law and fact include, but are not limited to:

    (1) Whether Comenity engaged in a pattern of using an ATDS to place calls to cellular telephones without the prior express consent of the called party;

    (2) Whether Comenity's conduct was knowing or willful; and

    (3) Whether Comenity's actions violated the TCPA.

    (4) Whether Comenity's action violated Florida's Invasion of Privacy law.

75. As a person who received the telephone calls using an ATDS or an artificial or prerecorded voice, without their prior express consent, all within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of the Class.

76. As a person who received the telephone calls without their prior express consent for a family member or relative's debt, Plaintiff asserts claims that are typical of the members of the Class.

77. Plaintiff will fairly and adequately represent and protect the interests of the Class, and Plaintiff does not have an interest that is antagonistic to any member of the Class.

78. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA and IOP.

79. A class action is the superior method for the fair and efficient adjudication of this controversy.

80. Class-wide relief is essential to compel Comenity to comply with the above-mentioned laws. The interest of class members in individually controlling the prosecution of separate claims against Comenity is small because the statutory damages in an individual action for violations are small.

81. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

82. Comenity has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the class as a whole appropriate.

83. Moreover, Plaintiff alleges that the above violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in her favor and favor of the Class, and against Comenity for:

   a. A declaration that Comenity's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 and Florida's Invasion of Privacy laws;

    b.      An injunction requiring Comenity not to call any third parties or numbers that were skip traced, or obtained through other means than by obtaining the called party's prior express consent to ensure that class members, including the Plaintiff, are not called now or when those class members obtain additional telephone numbers in the future;

    c.      An injunction requiring Comenity to file quarterly reports of third-party audits with the Court on its system and procedures not to call any third parties or numbers that were skip traced to ensure that class members, including the Plaintiff, are not called in the future;

    d.      An award of statutory and actual damages in an amount to be proven at trial;

    e.      An award of statutory damages for Plaintiff and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

    f.      An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class member for each and every call that violated the TCPA;

    g.      An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Classes and any Sub-classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

    h.      An award of Plaintiff's attorneys' fees, litigation expenses and costs of suit; and

    i.      Such further and other relief the Court deems reasonable and just.

Plaintiff, individually and on behalf of all others similarly situated, demands trial by jury.

                                                Respectfully Submitted,

                                               */s/ William "Billy" Howard, Esq.*
                                               William "Billy" Peerce Howard, Esq.
                                               Florida Bar No.: 0103330
                                               Billy@TheConsumerProtectionFirm.com
                                               The Consumer Protection Firm
                                               4030 Henderson Boulevard
                                               Tampa, FL 33629
                                               Telephone: (813) 500-1500
                                               Facsimile: (813) 435-2369
                                               Attorney for Plaintiff